Mr. S. Weiler, and is it Mr. Light, or how are you? Thank you, sir. Thank you. Mr. Rodofsky, whenever you're ready. Yes. May it please the Court, David Rodofsky for the appellant, Walter Dique. If I may, Your Honor, I reserve two minutes for rebuttal. The principal issue on this appeal is whether the plaintiff's, Mr. Dique's, 14th Amendment equal protection claim for racially motivated selective enforcement of the laws and selective prosecution accrues, as the district court found, at the time of the racially motivated stop in this case, or as we maintain on appeal, accrues at the time the selective prosecution terminated with the dismissal of the charges, which was in 2002. Everybody agrees if it terminates, if it accrues in 2002, then this lawsuit is timely. It's a two-year statute? It's a two-year statute in New Jersey. This was an arrest, as the record shows, in 1990, a conviction a number of years later. Mr. Dique, after serving several years in prison, was then released when the state court system on motion, actually, by the Attorney General of New Jersey suggested that there was at least a colorable claim of racial profiling in his case, as in other cases in New Jersey, and the court system in New Jersey then dismissed the charges in 2002. Thereafter, Mr. Dique filed this 1983 and 1985 claim for damages. And you certainly had, prior to the Supreme Court's decision in Wallace v. Cato, some good law on your side from our circuit in Smith and in Gibson. Well, and Gibson directly on point, Your Honor. Gibson directly on point. The question then becomes, and as you can see, most of the district courts believe in our circuit that Gibson has been overruled by Wallace v. Cato, although Wallace v. Cato dealt with, what, a false arrest? False arrest. That's correct. And that's the essence of the issue. You're right. And you can count the district courts. There are two district courts below, including the Gibson court, which has found that Wallace v. Cato does not impact on this court's unanimous decision in Gibson. On this point, the third circuit was unanimous. So the question of how is the thinking different, or how is the principle different of false arrest from selective enforcement for purposes of carrying out the principle of Wallace v. Cato? Analytically, they are two distinct constitutional torts. Wallace and Cato made clear that a claim for false arrest or false imprisonment accrues at the time that lawful process issues. Indeed, it's an interesting ruling in Wallace and Cato. They didn't limit it to the time when you were arrested because they noted that false arrest was similar to false imprisonment, and so it doesn't accrue until the false imprisonment ends, which is the time when lawful process issues an indictment, preliminary hearing, a probable cause finding. And for that purpose, the court was certainly right on Wallace v. Cato. The Heck v. Humphrey bar doesn't serve retroactively as an accrual because we're not even at a process of prosecution or conviction. Or to put it another way, false arrest, you still can be guilty of the crime you're charged with. You can certainly be guilty of the crime you're charged with, but the false arrest arises. It's an independent act which arises before the criminal proceedings of indictment, trial, conviction, et cetera. Not only does it arise then, but it terminates before you even get to trial. But isn't it the same with? Selective enforcement. Selective enforcement. You still can be guilty of what you did. Now, the state of New Jersey decided we don't like this, we're going to let this guy go, but the selective enforcement has nothing to do with the validity of the criminal proceedings that followed. It does in a sense, and that's why the Gibson opinion is very important as we put it in our applied brief. As this court said in Gibson, and there were two major statements that the court made in analyzing this as a claim that accrued when the charges were dismissed as opposed to when the arrest occurred. First, this court said that racial profiling on the New Jersey Turnpike, and I quote, was an invidious system of discriminatory law enforcement which selectively targeted minorities for drug crimes. And then specifically, the traffic stops were only a vehicle for these efforts. In other words, this court viewed in Gibson, and I think this court should be bound by that ruling, this court ruled in Gibson that selective enforcement, which then shades into selective prosecution, and we make both those claims here, is a process. It's not just a false arrest. It's a process that continues, and the whole purpose of the trooper here, under our theory, is to subject one to a racially motivated selective prosecution, not just a selectively motivated arrest, which is your false arrest claim. I want you to separate your discussion of selective enforcement from selective prosecution for a moment. Didn't the officers selectively enforce the law by stopping Mr. Dike because of his appearance, allegedly because of a traffic violation? That's correct. That was the start of the process. And that is 14th Amendment violation under selective enforcement in your view. That could be one particular claim of selective enforcement. That's correct. It is. Yes. That's the whole point of the selective enforcement, that he was stopped for a traffic offense solely because of his appearance, as well as going perhaps in excess of the speed limit, and that was never prosecuted. That's correct, Your Honor. So why didn't the statute of limitations accrue then? Because for the same reason this court further said in Gibson, a successful claim of selective enforcement, which is what you're suggesting this is, under the 14th Amendment would have necessarily invalidated Gibson's conviction. What this court said and what other courts, the lower courts said. But conviction for what? Any conviction. The conviction for the drug. He was never charged with traffic enforcement. He was not charged. As far as I know, he was not. He may have been given a citation, but that was not the point. In fact, the Third Circuit addressed that and said the whole point of this stop, when this court looked at it very carefully in Gibson, a long opinion in Gibson, the court was unanimous. It analyzed the tort of selective enforcement as being one really of selective prosecution. The law in this circuit is clear. If the defendant can show selective prosecution, the entire conviction is reversed. You don't just suppress the evidence from the arrest, and that's why I think we have an analytical difference here. If it was simply a false arrest, the only remedy you would have in the criminal proceeding would be suppression. The greater evil of selective enforcement on race, as opposed to just a Fourth Amendment violation, and then the selective prosecution, is that it infects the entire proceeding. And if it infects the entire proceeding, then the cause of action doesn't accrue until that proceeding is over, and under heck, somebody's had the charges dismissed. Obviously, the charges aren't dismissed. The plaintiff can't proceed. That's the essential difference analytically, that there's a difference between what I would call the pretrial error, the pretrial constitutional tort of selective enforcement or a false arrest, which is limited just to that arrest, and a constitutional tort which, in this court's view in Gibson, encompasses much more than the singular act of an arrest. It encompasses the entire prosecution during that case. Is there a claim of selective prosecution here? The language in the complaint initially talked about a violation of equal protection caused by the racial profiling system in New Jersey. I think that is broad enough to encompass a claim of selective prosecution, without using the terms selective prosecution. Indeed, in Gibson, where the complaint was virtually identical, and the complaint said selective enforcement, this court read that broadly to include the concept of selective prosecution. And that's why you have several courts that have said it. In fact, the Attorney General's brief points this out, and I have one other case that's been decided recently that supports it, that where we have what I would call a trial error, for example, an error trial where Brady material isn't turned over, where the prosecution willfully produces false testimony, that kind of trial error, the lower courts, including the Seventh Circuit, have said unanimously, even since Wallace, that those claims require a dismissal, and they don't accrue until the conviction has actually been reversed. In other words, what I'm urging the court to do is that this is more than a pretrial claim. In the case you talked about in the Seventh Circuit, were the prosecutors the defendants in that civil election? No. No, it was the police officers. I'm not going to argue this because it's not in my brief, but I'll give you a recent Seventh Circuit case which makes this point. It's Dominguez 545 Fed Third 585, a very recent opinion from the Seventh Circuit, which is a case in which the allegation was that there was both Brady violations, due process violations for introduction of false testimony, mainly police officer testimony. There's a causation question here, obviously, when you get to trial. How is it if the prosecutor who's prosecuting, why are these defendants who are the two state troopers and the former superintendent liable? That's a causation issue which I'll address in a moment. But in terms of the constitutional tort, that court, as the Attorney General conceded in its brief, there are several cases around the country now where if you have a constitutional tort at trial, even though it was presaged by false reports earlier, we have one continuous and comprehensive tort that includes a trial. It's not complete. This tort is not complete. A tort of selective enforcement and selective prosecution is not complete and actionable until we're at the end of the trial. The whole point, as Gibson pointed out, of racial profiling. Are you sure about that? Selective prosecution, if he had known this from his allegations back in 1990, wouldn't he have brought a false arrest and selective prosecution claim at the same time? I'm not saying he could not have brought it at that point. It would have only encompassed the arrest. It would not have encompassed the prosecution. Well, he would say that I've been arrested and they're prosecuting me and I want to stop it because I believe it's based on racial profiling. Well, I don't think he could have filed, when you say stop it, I don't think he could have filed an injunctive claim. He would have been barred by Younger and all the doctrines that would have prohibited the federal district court from, at that point, enjoining the state prosecution. But the court in Wallace said that the false arrest, that he knew it was false arrest or whatever, it ended, in other words, the time that you start counting the statute of limitations. It ended much earlier than a false imprisonment claim. It ended when a legal process was initiated against him. And isn't this the same thing? That's right. But interesting, what the court said was they didn't start the statute of limitations, even on the false arrest, which I think is distinctly different. At the point of arrest, which you could have under this theory, they said it includes the time he was in custody until lawful process issued. That's the point when the clue, because at that point, that's the point. It all comes back to Judge Ross' question. Isn't that the same concept as selective enforcement? And the difference is that tort is over. As the court analyzed it in Wallace v. Cato, regardless of what happened after that, the tort of constitutional tort of unlawful arrest, false arrest, and false imprisonment as a matter of law ended at the time lawful process issued, when there was an indictment or a grand jury finding, probable cause, or preliminary hearing. This tort is different, as Gibson recognized. The traffic stop, as this court said, was only the vehicle, the first step in the constitutional tort of selective prosecution, which encompassed the entire trial. And, again, the remedy for selective prosecution is not just suppression as a result of the initial police action. It's the invalidation of the entire criminal proceedings. If the State of New Jersey had not determined that Mr. Deke should be set free, would he then not be able to bring his cause of action until, ultimately, his conviction was overturned or reversed? If New Jersey had not agreed, Mr. Deke would have, in post-conviction proceedings, have had to argue under state law and federal law that the conviction was tainted in a post-conviction proceeding. And if he never succeeded in that, he'd have no remedy? He'd have no claim. Heck makes that clear. Isn't selective enforcement, if it, in fact, exists, a tort which needs to be recognized whether or not the conviction is maintained? And you were saying, my understanding of what you have just said is it's a tort claim, constitutional tort that can only be brought if the conviction is overturned. And I think that is a limit on that conduct that perhaps should not be imposed. If I understood the Court's question, that's what was addressed in Gibson. Gibson said that this tort, if he's successful in this civil lawsuit, it would, in effect, mean the entire criminal proceedings were invalid. And that's why the heck bar comes into place. And that's why he had until two years after 2002 to file his claim. But if the entire criminal proceeding and term of imprisonment is never held to be invalid, then is there no claim at all? But shouldn't there be a claim? Isn't that an argument why it should precede the conviction to determine if there's a claim, rather than follow the overturning of it? But I think that's exactly what was decided in Gibson. The State argued in Gibson, before Wallace and Cato came down, that however you look at the tort of selective enforcement or selective prosecution, that doesn't necessarily, if the plaintiff was successful, doesn't necessarily invalidate the State proceedings, and therefore the heck bar doesn't come in, therefore he had to file way earlier. Gibson unanimously rejected that argument. And that's not before this Court now. That's not what Wallace and Cato addresses. The heck bar is independent of Wallace and Cato. If you are convicted, regardless of the tort, putting aside statute of limitations, your constitutional claim, you don't have one until such time as your conviction is reversed, if your 1983 claim would necessarily invalidate the conviction in State court. I think the repercussions of what you are arguing could be very serious in cases other than this, where the conviction was not vacated, where there perhaps was selective enforcement and the conviction was never vacated, the sentence was served, and in that situation is the selective enforcement no longer relevant? I think that repercussion of what you're arguing is something that needs to be seriously considered. I don't disagree, but I think that result, which is an anomaly, I think, in our law to some degree, is the result of heck. I mean, heck will bar any potential civil rights plaintiff who may have an absolutely valid claim of racial profiling or selective enforcement or any other constitutional claim if that person cannot successfully overturn his State conviction. But realizing that's what heck says, I'm not convinced that your position is the most equitable position in view of the conduct that is being criticized. Well, I think it's certainly equitable in this context. Well, in this particular case, but in the overall. What are the consequences of ruling in your favor? Well, I think that's a very important point. There's nothing we can do about heck. Heck is there. I mean, the problem that Judge Roth has just pointed out is the result of heck. It will mean in some cases, and it certainly has been historically as a result of heck, that persons whose constitutional rights were violated in the criminal proceeding, whether it's by arrest or something in the proceeding itself or whatever happened, that person has no 1983 claim unless that person can show that in winning that 1983 claim, it wouldn't necessarily invalidate the criminal prosecution. But under Wallace, that person does have a claim because the claim accrued at the time of selective enforcement. It has the claim. If that person is then convicted, that claim is extinguished as a result of heck. There are really two things going on. Wallace and Cato, as to when you should file, heck still is on the books after Wallace and Cato. And if we had filed early in this case and then he was convicted, our claim is extinguished as a result of heck. As the Court says, the district court would have to dismiss the 1983 claim. If he was later successful in overturning it, then we'd have a different situation. Well, arguably, Wallace is saying your claim was not extinguished when he was convicted because it is a constitutional tort which exists independent of any following conviction. It exists based on the conduct at the time of arrest. But I think what Wallace does not say and does not overturn Gibson on this point is that on the question of whether or not the conviction in state court extinguished his claim, even if he had made it earlier, this Court in Gibson unanimously ruled that it would be extinguished because if he was successful in his 1983 claim without going through habeas and everything else, that would call into question the validity of the state conviction. I mean, that's heck. I don't like heck, but that's what we're faced with on this side of the bar. Let's assume for the moment you're right on everything you say. You still have a two-year statute of limitations. The case was filed in February of 2004. Is that correct? That's right. But wasn't there an attorney certification filed in July 21, 2001, where the attorney submitted information relating to the racial profiling in that certification? But that went to the tolling question. We're not arguing that even if the state is right that there was tolling because Mr. Dike was not aware of his racial profiling claim. The district court found he should have been aware of it at least by 1999 or 2000. Our claim is separate from that. It doesn't rely on that. Our claim is a legal one that this constitutional tort is a trial deprivation, that it doesn't accrue until the trial is over and the conviction is reversed, which is 2002, and we were certainly timely if it was after 2002. I think you can't read Wallace and Cato as broadly as the state is reading. The point is more basic. If the attorney knew about the racial profiling in July of 2001, isn't a claim for selective enforcement filed in 2004, more than two years after that, untimely? Not if the claim does not accrue until 2002, which is our point. It would be the same thing as the Seventh Circuit case I just cited. Let's say a defendant in a criminal case is on notice or thinks that the police are hiding evidence, they're creating false evidence, whatever the claim may be. Well, perhaps he can file early on in the pretrial proceedings of the criminal case, but as the Seventh Circuit has recently held, that claim legally does not accrue until that evidence is introduced at trial, the false evidence or the exculpatory evidence is withheld. It's a trial claim, and it only accrues as a result of heck once the state conviction is reversed. I mean, that's the point. In other words, it doesn't matter whether I knew about it ten years ago. The legal question is when does it legally accrue? And that's where I think the better reasoned opinions, even after Wallace versus Cato, if we're right, if selective enforcement is a process, as this court found it in Gibson, it's a process that includes the entire trial. The traffic violation stop was only the start of the process. And if, in fact, selective prosecution means the entire prosecution is invalid, then it's a trial claim, not a pretrial claim. That's the essence of our argument. Thank you. Good morning, Your Honors. My name is Leonard Light, and I represent Troopers Vona and Mulvey in this matter. If it's acceptable to the court, I'd like to take five minutes from my argument and defer the remainder of my time to Mr. Etzweiler on behalf of the State Police. That's fine. Thank you. At the risk of oversimplification, it's an approval case. We've acknowledged that. What we have to do is look at what the elements of the offense are that is being alleged. With regard to selective enforcement of the laws, there's two elements to that cause of action. Element one is selective treatment. Element two is that that selective treatment was motivated by an intent to discriminate. No more, no less. There's nothing about that offense, that constitutional violation, which is dependent on the outcome of any criminal charges which may be filed. Therefore, under Wallace, with regard to the approval issue, very simply, a cause of action for selective enforcement accrues on the date of the stop or the date of the arrest, and there is no heck deferral. The State of New Jersey apparently concluded that the selective enforcement poisoned the whole process, including the conviction, and therefore determined that Mr. DK should be set free and the conviction should be vacated. The State of New Jersey vacated a number of cases. There was no individual finding of merits or lack of merits on those individual cases. What the State said, there are these 50 or so cases, and quite frankly I should defer to Mr. Etzweiler on that since he represents the State and I represent these individual troopers, but in no way, shape, or form was there any specific finding in the Heinzel Affidavit or in the dismissal of those cases that Mr. DK's claim was meritorious, just that DK had raised profiling, and the State dismissed that case and a number of others as a result of that allegation. No more, no less. This is not a false arrest case. This is not a malicious prosecution case. If it were a malicious prosecution case or a 1983 case based on malicious prosecution, you would look to whether or not there was a vacation of the criminal conviction. Again, let's look at what's alleged and what the cause of action is. It's selective enforcement. There are two elements of selective enforcement, neither of which is dependent upon the outcome of the criminal charges. Does selective enforcement give cause to vacate a conviction? I'm sorry, I couldn't hear you. Does selective enforcement, if determined to have existed, give cause to vacate a conviction? No, they're independent of each other. In fact, with a selective enforcement cause of action, as Your Honor questioned counsel earlier, you don't even have to bring criminal charges. The selective enforcement doesn't have to be a trial, it doesn't have to be a conviction. Selective enforcement, a plaintiff would have a cause of action for selective enforcement upon being selectively enforced or upon having charges being brought against him or being arrested improperly. But if Wallace v. Cato didn't exist, would we be bound by Gibson? Well, you decide, Gibson. If Wallace v. Cato didn't exist, Wallace v. Cato tells us how to apply the Heck Deferral Rule. Wallace v. Cato effectively overrules the decision in Gibson. But note one of Wallace v. Cato's says that the cert question is limited solely to false arrest. Exactly. But in Wallace v. Cato and in the analysis the Supreme Court followed, they don't say that this analysis applies only to Fourth Amendment jurisprudence. The logic of it would apply to Fourteenth Amendment as well as Fourth Amendment jurisprudence. There's no distinction in the way the Supreme Court looked at the Heck Deferral Issue and the way they analyzed it. They talked about what you look at the elements of the cause of action, what the cause of action is, and from that you determine whether or not Heck applies, whether or not the maintenance of the cause of action civilly would necessarily invalidate an extant conviction. And again, getting back to the elements of a selective enforcement case, the conviction is irrelevant. It's not part of the case. It's not part of the cause of action. Therefore, the Wallace analysis does apply, and the Wallace analysis does, in effect, overrule your Honor's prior decision in Gibson. If a selective enforcement claim were brought, what would be the damages sought? If a selective enforcement claim were brought, it would depend on, I guess, the nature of what the charge was and what happened to the plaintiff. I don't believe it would carry on to the ultimate prosecution and the ultimate conviction, but it's a loss of liberty. Let me rephrase that. If it were a selective enforcement claim, what time would that cover? I believe it would be similar to the false arrest type of claim, Your Honor. I would analogize it to a false arrest type of claim where it would be your loss of liberty, your stop, your prosecution, up until the point in time where you're held over, where bail is set, where charges are formally filed, where you go into the malicious prosecution sort of avenue.  Counsel, I want to go back to something you said when you started. You said that the cause of action here accrued at the time that Mr. Dike was stopped. Yes. Is that New Jersey law? Did he know at the time that there was selective enforcement going on? According to his testimony, yes. He said he was stopped for no apparent reason. He said he was stopped because it was a pretextual stop. That was his deposition testimony. Well, the officer said he was stopped for speeding. That's correct. Certainly the officer maintains that he was stopped doing 67 and a 55. The state took the position that he was stopped because he was Hispanic. The state didn't take that position, I don't believe. Well, I think they did. Didn't they dismiss this case? The state, as I said, in answering Judge Roth's question, the state dismissed this case based on his allegation that he was profiled. The state never said, yes, you were profiled, and, therefore, we're dismissing the case. The state took a number of cases, none of which were addressed on the merits, none of which were decided on the merits, and said, you know what, in each of these cases profiling was alleged and profiling was raised. We are making a decision on behalf, the state is making a decision that we're going to vacate those convictions and they're going to be dismissed, and that's exactly what happened in this case. I'm still not clear as to your answer. Are you saying that he discovered that he was selectively stopped? He being who? He being Mr. Dekay? Yes, we're talking about Mr. Dekay. Okay. Are you saying that he knew at the time he was stopped that it was selective enforcement? I believe Mr. Dekay, at the time he was stopped, always felt it was as a result of selective enforcement. Is that in the record? Well, it was a 12B motion that brought us here to dismiss, so I don't believe it's in this record below. It would be in the deposition, which candidly is not part of the record that you have right now. It looks to me from the record that he didn't know that until his attorney tried to get this dismissed ten years later. Again, the record below would not reflect that. The deposition transcript is not part of the record below. I can't answer the question in any more detail than that. Well, the attorney did come into court after he came back into the jurisdiction and tried to get this case thrown out. That is correct. The criminal case. That is correct. So at least at that time he knew. That is correct. Did he know before that time? From the record below, I can't answer that question, other than to make reference to a deposition, which is not part of this transcript. Well, under New Jersey law, is it the time it occurs or the time of discovery where the statute of limitation accrues? The answer would be that I believe the cause of action would accrue at the time of the stop. I don't believe that this is subject to some sort of discovery rule type of analysis, where you would say that, well, whenever you figure it out, you can then bring the cause of action. A cause of action for selective abortion is not dependent on the individual knowledge of the defendant. So the statute starts running even if you don't know that you have had a tort committed? I believe it does. Thank you. Thank you. We'll go for Ms. Ratzweiler. May it please the Court. Let him just announce his name. I'm Larry S. Waller, and I'm here on behalf of the appellee, Clinton Pagano. Yes, Judge Roth. Does selective enforcement in and of itself invalidate a conviction? If I understand the law, the murky distinction between selective enforcement and selective prosecution is difficult. One could read Gibson as arguing that selective prosecution invalidates the conviction. One could read Gibson as concluding that that was an element, that that was a case of selective prosecution. And one could read Gibson as saying that selective enforcement punts on the question might defer to the Supreme Court of New Jersey in State v. Sagers, which says that suppression of the evidence is an appropriate remedy. Is this a case for selective prosecution? Is this a case of selective prosecution? I mean, Mr. Rudofsky said it's, reading the complaint, even though that phrase isn't used, it's clear that that's what. Well, we're going to argue in the alternative, like any good lawyer. We argue, number one, no, this case does not involve selective prosecution. And if it does, my clients aren't responsible for it because they didn't prosecute. They were on the enforcement end. But, two, if it did involve selective prosecution, then in response to Judge Alarcon's question, the cause of action arose. And, by the way, a cruel, for federal causes of action is a question of federal law. Wallace makes that clear. You don't look to New Jersey law. You look to federal law. And this court in Gentry v. Resolution Trust said that the cause of action arises when the plaintiff knows or has reason to know, quoting from Gibson at 435, which quotes from Gentry, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury, which is the basis of the 1983 action. Now, going back, did this plaintiff have reason to know that it was selective enforcement? If you take his allegations as true, of course he did. In his basis, there was no basis to stop him. He wasn't speeding. He wasn't stopped until the trooper killed him. Beside him, looked at him, said, ah, yes, you have the appropriate killer to be racial profiling, and then pulled behind, put on his lights. And then when the plaintiff told his nationality, the trooper came. Where in the record does it appear that he didn't know that he was speeding? He alleges in his complaint. Oh, well, we, of course, claim that he was speeding. Isn't everyone on the New Jersey term part of speeding?  His complaint alleges, and we'll accept it. Speak for yourself. For the purposes of the cause of action, we will accept the complaint as true. The complaint alleges not only an equal protection violation, but also a Fourth Amendment violation. It says that there was no basis under Delaware v. Prowse for the stop. That must include the allegation that there was no speeding, because speeding would have sufficed. Going on, if there was a selective prosecution, then that cause of action accrued when the prosecution occurred. And that occurred back in 1990 with the return of the Middlesex County indictment. The elements of selective prosecution are put forth in cases which we cited, such as Government and Virgin Allens. If he had brought back in 1990 a selective prosecution claim, keeping in mind that this information came out many years later, how far do you think he would have gotten with that? Well, I don't know, because I'm trying to remember. Heck was decided in 1994. Oh, he'd have had a hard time, but he could have availed himself of discovery. His own counsel says that his own, his current counsel says that his defense counsel was committed malpractice for not having brought in the racial profiling case when he finally returned eight years later in 1998 and faced charges on the indictment. Of course, what he would have done in 1990 is a bit moot, because he chose to abandon, he chose to become a fugitive. Did you say he was indicted in 1990? He was indicted in 1990. The record, that's part of the record, yes. In the Middlesex County indictment. I thought he fled after being arrested and bailed. He did, but he was indicted in absentia. Oh, in absentia. Yeah, yeah. New Jersey doesn't normally try people in absentia, but it's quite appropriate to indict people in absentia. So if he was indicted in absentia, how did he know that he was indicted? Well, he should have known. I don't know whether he knew or not, but when he posted bail. You said he did know it. Well, good point, good grief. He posted bail, and it was his obligation to report to court. That's true. As the charges proceeded, he chose to abscond. The fact that he chose to abscond is hardly a basis for suggesting that the accrual was postponed until a return. But if it did, fine, then it accrued in 1998 when he was finally caught. That still precedes the heck barring conviction, and under Wallace you can't have retroactive deferred accrual. But going on selective prosecution is not like Miranda. It's not like Brady. Those cases which have held that Miranda is sort of a tort that's in the air. If a police officer questions me without giving me my Miranda warnings, I can't on that basis sue. The violation doesn't occur until evidence that I've given is used in court as a basis for a conviction. But if he hadn't been selectively stopped, the drugs that were found in the automobile would not have been present to be used in court as the evidence that brought about the conviction. I'm not sure how to respond to that, Your Honor. That's correct. But what I'm talking about is the tort of selective prosecution if it exists and when it accrues. And I'm claiming that it accrues at the time the prosecution is brought. There's nothing in the case law which says that the prosecution must terminate. Have I responded to Your Honor's question? I probably haven't because I probably bypassed it. But you're absolutely right. No, I think you have. I mean, my original question, yeah. Okay. Selective prosecution is like double jeopardy. Is the position of the State of New Jersey that selective enforcement does not invalidate the conviction? I think the position of the State of New Jersey is that selective enforcement would lead to a suppression of evidence which would probably invalidate the conviction because usually without the evidence you can't get the conviction. But our position is that selective prosecution is like double jeopardy. The tort arises whether you're – if you once face jeopardy and then you're going back and put to trial again, that is the violation. Whether you're convicted or acquitted doesn't matter. You have a right not twice to face jeopardy. Likewise, like the prosecution, you have a right not to be prosecuted. Whether you're guilty or innocent, if the prosecution occurs and it's selective, that's a violation. And the accrual of that right occurs when the prosecution occurs. It would be a terrible rule of law. The classic selective prosecution place is Yip Wo versus Hopkins. If in analogizing to that, the District Attorney of San Francisco said, I'm going to rigorously enforce all safety regulations for Chinese laundries, but I'm going to do it only for Chinese laundries and not laundries owned by other people, if what the plaintiff is saying is correct, that doesn't create a 14th Amendment cause of action until the prosecutor chooses to terminate. That's a terrible state of affairs. State judges and federal judges should be allowed to intervene and stop immediately that prosecutor from engaging in that prosecution. And even under Younger, there's the bad faith exception if the prosecutor made such a statement. A federal judge should be able to go in and stop that immediately. Let's go back to 1990. If he believed that there was selective prosecution at that time on the grounds of racial profiling, what evidence did he have as a practical matter to file a suit at that time? He thought it might be racial profiling. What evidence did he have back in 1990? For the selective enforcement, he had the evidence that he wasn't speeding, according to his complaint, that for no reason he was stopped only after the officer pulled beside him, looked at him, determined his racial composition, and he also had the evidence that But as it turns out, he was speeding, right? That hasn't been resolved. I believe he was speeding, but his allegations are, which will accept as true for the purposes That he wasn't speeding. That he wasn't speeding, that he's making both a forth amendment. But as a practical matter, how many people really bring those kind of claims prior to conviction? Let's assume for the moment he didn't abscond for a while. Well, people who are – I can't respond to that, Your Honor. I mean, as a practical matter, doesn't he really have to have some pretty concrete evidence that was racial profiling before you could bring such a claim, before somebody would take the case for you, unless you want to file it pro se? That may be. I don't know. It doesn't revise the law of accrual, which, I mean, there's no exception for accrual which says the case doesn't accrue simply because the proofs are formidable. And in any event, that's not a concern that should pertain to this plaintiff because he charges to become a fugitive. But back in 1990 or so, wouldn't he be concerned, or thereafter, that whatever I do would, in effect, call into question a conviction? I guess not in 1990 because he wasn't convicted until later because he absconded. Well, I'm sorry. I'm not sure I understand your question. The point being that if you were to bring such a case then, usually what you're met with is a claim that what you're trying to do is overturn the conviction. Well, of course, if he had brought it. Although I guess the answer to that is that Gibson answered that at one point in time. If he had brought it in 1990, I don't know what the state of the law was because that was prior to Hecht v. Humphrey and it was prior to this Court's decision in Smith v. Holtz. It's possible that this Court would have anticipated Smith v. Holtz and would have said, no, you can't bring it now because of the pending charges. Just defer it until the case is over. But still file it to total these limitations running. And yet you're saying that the cause of action accrued when it doesn't seem as a practical matter he really would have any indication to bring such a suit. I can't speak to that issue. Many plaintiffs pursued the matter. Many organizations pursued the matter. Ultimately, some of them prevailed. He may have been one of the prevailing parties. I don't know. That's not in the record. But respectfully, again, there's no rule which says that accrual is postponed because you have a difficulty on the proofs. So, in effect, coming back full circle to the very first point that we made with Mr. Radofsky, the question is, does Wallace v. Cato, which applies to false arrest, do you extend it to apply to selective enforcement or selective prosecution when, in fact, there's a case on our court dead on with respect to selective prosecution? It's not a question of extent. I mean, that assumes what the plaintiffs are arguing, and that is that Wallace is an idiosyncratic ruling with respect to the Fourth Amendment. Wallace was much more fundamental. It overruled the basis upon which Gibson was decided. And Gibson announced it. But, again, putting it once, the cert was taken with respect only to false arrest. Yes, that's true. But I think we explained in our procedural history there were other questions raised, and the court chose to address only one of those questions and chose to frame the question itself. But its analysis was to abolish retroactive deferred accrual, which it considered a bizarre extension of HECC. Gibson makes perfectly clear that its analysis was premised upon retroactive deferred accrual. The only thing Gibson decided was that the conviction was a HECC bar to both the Fourth Amendment claim and to the equal protection claim. Under law at that time, Gibson stopped because that's all it had to decide. Once you had the HECC bar, you automatically had the HECC deferred accrual once the conviction is set aside. Wallace comes along and says, not only with respect to the Fourth Amendment, but across the board, no, retroactive deferred accrual is bizarre. You have to look at the sequence. If the cause of action preceded the barring conviction, if the accrual of the cause of action preceded the barring conviction, then there is no deferred accrual. So this court has to resolve what the Gibson court did not resolve, and that is, does the accrual of the equal protection claim precede the conviction? Fortunately, it doesn't have to do with respect to the Fourth Amendment because Wallace itself did that and made clear that the Fourth Amendment claim preceded the conviction. That's why Wallace was out of luck. But you have to decide, does the equal protection claim accrue prior to the conviction? Our argument is absolutely. What if the evidence that leads to the conviction is obtained as a result of the constitutional tort, be it false arrest or selective enforcement? And you have said that the state of New Jersey, if the evidence that led to the conviction, well, that the evidence obtained at the time of the selective enforcement, and I presume of the false arrest, that that evidence would be suppressed. Well, then we agree under the compulsion, inasmuch as Gibson construed footnote 7 of Heck to say that suppression does, that a cause of action is heck barred by a conviction if its validity would imply the suppression of evidence which is necessary for that conviction for Fourth Amendment purposes. I think, and by the way, Wallace, we didn't like it, but Wallace affirmed that part of Gibson. Was there evidence seized at the false arrest in Wallace? I'm sorry? In Wallace, the false arrest, was there evidence seized at that time which led to the conviction? Well, the court ended up, that was the contention, but the court ended up not having to decide that issue because it said we don't have to decide it. The sequence makes clear that you couldn't have deferred accrual in any event before the amendment. Well, is that an issue that we can decide now? Whether if the evidence that was seized at the time of the false arrest or the selective enforcement would have been suppressed, and that is the evidence that led to the conviction. Since Wallace didn't decide that, can we decide what effect it should have on the accrual of the cause of action? I think under Gibson you would be probably compelled to decide that if the evidence was necessary for the conviction, then the conviction is a heck barred. Okay, so shouldn't we decide that because Wallace doesn't deal with it? Well, I don't think that there's a need to decide that. I think the real issue to decide is, does the equal protection claim accrue before or after the conviction? You can assume that it is a heck barred. We will go that. Even if it is a heck barred, even if that suppression would imply the invalidity of the conviction, and we will assume that, your question is, did that cause of action precede or postdate the conviction? We say it preceded. The tort was the prosecution. The prosecution occurred prior to the conviction. This is not an esoteric tort like Miranda, where for some reason, I don't fully understand, the violation doesn't occur until the evidence is actually adduced to trial and results in a conviction. It's perfectly clear that you are hurt, you're injured, you suffer, you have a constitutional violation if you are selectively prosecuted at the time you were selectively prosecuted, whether the prosecutor follows through with that prosecution or not, and whether you're convicted or not. The tort arises at the time of the prosecution, therefore precedes the conviction. But isn't the harm in part dependent upon whether the evidence seized at the time the tort was committed is the evidence that results in the conviction? I'm sorry, Your Honor. I'm a little bit deaf. Isn't the harm, isn't there a greater harm if the evidence seized at the time of the constitutional tort is the basis for the conviction? The conviction never would have happened. That's completely analogous to the Fourth Amendment situation. Yes, Your Honor. And that's controlled by Wallace. That is a harm. The extent of the harm cannot be determined at the time of selective enforcement, but can only be determined at the time of conviction and doesn't Absolutely. Damages can never be determined merely from the accrual. As the Wallace Court points out, you have to wait and see what happens. The damages may go up and up and up as things happen. But in determining the statute of limitations and when it accrues, if we analogize to state tort complaints that if you have a sponge left in you when you have surgery, you could say if you knew about it at the time, the cause of action would accrue at that time. Right. But, in fact, since you don't know about it until you have complications three years later, the cause of action accrues at the time when the extent of the damages and the existence of the damages becomes apparent to you. Yes. For damages, you don't need to know the extent of your damages for accrual. But that affects not only the damages, it affects the accrual of the cause of action. Yes. Your Honor is talking about this discovery rule where sometimes you don't know you're injured until later down the line. Even if that is the case, even if you apply that rule, and, again, going back to gentry, when you know or have reason to know of the injury, which is the basis for your action, even if you assume that this individual didn't have reason to know that he was selectively being prosecuted in 1990, as Judge Hayden found, he certainly knew later down the line. If he had been an alert plaintiff, he would have seen everything that was going on with racial profiling, and he also knew what was happening with the circumstances of his own case. And a tremendous amount happened prior to his conviction. He certainly was aware. Certainly the accrual occurred prior to the conviction, and under Wallace we're home free once that happens because of the sequence. I thought you answered in response to Judge Ross' question a moment ago that damages, you might have additional damages for selective enforcement that come into being later. Is that correct? Well, in theory you could, but your Honor is getting into the question, is there a distinction, I think, between the damages for selective enforcement and selective prosecution. I don't know. I suspect so. Well, you're trying to fit under the rationale that was given by the court in Wallace v. Cato, and Wallace v. Cato said if there is a false arrest claim, Supreme Court in quoting another case, or actually a provision of an article or a textbook, if there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. Right. And there was a policy for that, and that's because if you... And if you're saying it covers more, then aren't you really taking your case outside of the false arrest claim context, and therefore it is different than Wallace v. Cato? The cause of action is certainly different, but the principle that Wallace stands for, that is you don't have retroactive deferred accrual, is what we're relying upon. The question is, did the cause of action accrue before or after the conviction? I'm not at this point... Well, we talked a little bit about damages, perhaps we shouldn't have, but the real question is here, accrual. Now, and I don't know, I haven't researched fully, I think Hector v. Watt speaks somewhat to that issue, and we've fought back and forth as to its meaning, but I don't know what the damages are for selective enforcement and what the damages are for selective prosecution and whether they're different. What I'm asking, what I'm looking at now is, when did the torts accrue? The torts accrued under gentry when the plaintiff knew or had reason to know of the injury which caused the action. Let me clarify something that you said earlier in my mind. Are you saying that if the defendant is indicted, that is the accrual date, not the date months or maybe years later when he's convicted? For selective prosecution? Yes. Well, I don't know because in some jurisdictions like Pennsylvania, it don't always go by indictments. Well, all right. Accusatory plea. I presume the elements of selective prosecution, as they're defined in Government of Virgin Islands v. Harrigan, is first they must provide evidence that persons similarly situated have not been prosecuted. Second, they must show that the decision was made on the basis of an unjustifiable standard such as race, religion, or other arbitrary classification. They require some type of prosecution. How the jurisdiction institutes the prosecution in New Jersey for indictable crimes, that's an indictment. Regardless of the way they institute it, your point is, I thought, that once it's instituted, that's when the cause of action accrued, not when the conviction is returned by the trier of fact or there's a plea of guilty. That's under the assumption that we have a selective prosecution case here and that my clients are liable for it, although, again, I'm claiming they're not. But if they are, yes, you need a prosecution. You do not need a cessation of the prosecution. No case has ever held that, and that would be terrible law to hold it. That would be contrary to public policy. You can't have the prosecutor determine accrual by his or her own decision as to when to terminate the prosecution. Thank you very much. Thank you very much. Mr. Radofsky, we'll have you on rebuttal. I think you have two minutes. Yes, and I appreciate the Court's time on this. I think the essence of the argument, Judge Ambrose, you just stated, I think they've argued themselves out of this Court. They have equated a claim of selective enforcement with a claim of false arrest. That's what they say happens here. Selective enforcement starts at the time you're arrested on the New Jersey turnpike and charged for racially motivated reason, no different from a false arrest. As Wallace and Cato says, for that specific act of the stop of the person and the initial arrest of that person, whether it's a Fourth Amendment violation or a Fourteenth Amendment violation, that ends at the time lawful process issues. And, in fact, counsel for the state troopers said he didn't think there'd be a claim made at that point for the selective prosecution itself. That's a separate tort. The selective prosecution, when we get to trial, it's more than just the false arrest. It's more than just the search. What we now have is a continuing tort, a continuing tort, which includes the process at trial. And the reason we have the state troopers as opposed to the prosecutor on causation, as we argued in our brief, is that the state troopers never told the prosecutor we were engaged in racial profiling. That taints the prosecution. It's like a malicious prosecution. Don't you have to bring the prosecutors into the case if you are making a claim that develops into selective prosecution? I think not for this reason. As in this Court's malicious prosecution jurisprudence, there are numerous cases where police officers have been successfully sued for malicious prosecution because they started the process and didn't give honest and full disclosure to the prosecutor. And, in fact, this Court's own case on causation says it's only where the prosecutor has made an independent judgment with all the information that liability of the officers is cut off. And obviously there would be prosecutorial immunity if we were trying to sue the prosecutor. Here there was not full disclosure. This was deceitful. The troopers never said the real reason why they made this stop. But the essential point is, and that's why this Court said in Gibson, a successful claim of selective prosecution invalidates the prosecution. Not the arrest. It doesn't result in suppression. It invalidates the entire process. And to analogize, as the State has to, the claim of selective enforcement or selective prosecution as one of false arrest means they lose because there could be no claim thereafter for the racially motivated prosecution itself. Because, as the Supreme Court said in Wallace v. Cato, your claim ends at the point of indictment. Is there a difference in the elements that one has for malicious prosecution versus selective prosecution? There is. The one additional element you would have with malicious prosecution is you would have to show there was no probable cause for the arrest. Here, obviously, if you believe the trooper that he was speeding, there was initial cause for the stop. The whole point about selective enforcement and selective prosecution is it's an unusual tort. It admits that there may have been criminal activity, but the State is treating you differently because of the color of your skin. And that's what infects the trial process. That makes it different from a false arrest or a suppression issue. It infects the entire process, which is why I think this Court said in Gibson that the remedy would have to be in the criminal process in validation of the criminal conviction. And without the evidence seized at the time of the selective enforcement, there could be no conviction. Well, I think in this case that's right. In some cases, maybe there was evidence that they could have done otherwise. Is that a factor that we should consider in determining accrual? I think it is a factor. I don't think it's the controlling factor. From our point of view, I think the controlling factor is that this is an ongoing process, as the Court recognized in Gibson. It doesn't end within a couple of days after the arrest as a false arrest claim does, and that's why the Court only addressed false arrest in Wallace v. Cato. And when you've got a tort like this, like the Miranda violation, like Brady, like false testimony at trial, then you have an analytically different kind of claim. Thank you very much. Thank you. Thank you to all counsel for a very well presented argument. We'll take the matter under advisement.